## MACY v. HAYS.

1. An express trust can only be created or declared in writing.

(a) But no formal words are necessary to create such a trust; and whenever a manifest intention appears that another person shall have the benefit of the property, the grantee shall be declared a trustee, and a trust is created.

(b) Where a mother who owns funds in the possession of another, in writing requests the latter to create a trust in said funds for specified purposes, and a written declaration of such trust, fully setting forth the terms and purposes thereof, is signed by such holder and her signature acknowledged before a notary public, and where the mother signs a written approval of the creation of such trust, the same being embodied in the face of such declaration and her signature to such approval is acknowledged before witnesses, one of whom is a notary public, the creation of such trust fully complies with the statute of frauds which requires such trust to be created or declared in writing.

2. Where the mother at the time of the creation of such trust held title to real estate which she had conveyed to another to secure debt evidenced by her note, which real estate she afterwards conveyed to another in trust for her two children, subject to such loan and security deed, and where the trustee purchased the note evidencing said debt and took a transfer of the security deed in the capacity of trustee, and where the children afterwards became of age, and their trustee holding the title to such real estate conveyed the same to them subject to such security deed, and where the children in turn, for a valuable consideration, conveyed the same to their mother, subject to such security deed, such transaction did not amount to a payment of such debt and the extinguishment of such security deed, upon the theory that it was paid with the money of the mother, and that in consequence the transferee of said note and security deed held the same in trust for the mother.

3. The purposes of the trust referred to in the first headnote were: (1) for the trustee to pay the income therefrom to the plaintiff during her life, and (2) upon her death to pay the principal of such trust funds to her children, and in the event that either of them had died

Cancellation of Instruments, 9 C. J. p. 1224, n. 72.
Mortgages, 41 C. J. p. 689, n. 56 New.
Trusts, 39 Cyc. p. 30, n. 15; p. 46, n. 53; p. 53, n. 85, 88; p. 103, n. 99.

before the death of their mother, leaving issue, to pay the portion of such principal which would have gone to such child to such issue, per stirpes, and in the event either of said children should depart this life without issue, prior to the death of the plaintiff, then to pay the whole of the principal fund over to the other of said children or to the issue of such child, in equal shares.

(a) Such trust is executory during the life of the mother.

(b) The conveyance from the children to their mother, made in 1918, to the real estate embraced in said security deed, is expressly made subject thereto; and the plaintiff by virtue of said conveyance acquired no title to the interest or estate held by the holder of such security deed.

(c) The quitclaim deeds made by the children to their mother in March, 1926, which conveyed the property embraced in such security deed, "without reservation as to any loan, security deed or mortgage," were made after the institution of this suit, and did not entitle the plaintiff to cancellation of the security deed, for the reasons, (1) that, if these deeds were necessary to give her a cause of action for the cancellation of the security deed, her cause of action was not complete and had not accrued at the time of the institution of this suit; and (2) that these conveyances did not vest in the mother all of the contingent remainder interests created under the trust.

4. The title under the security deed did not merge in the title which the plaintiff acquired under the conveyances from her children, for the reason that the children did not have the entire title and estate created under the security deed.

No. 5434. JANUARY 12, 1927.

Equitable petition. Before Judge E. D. Thomas. Fulton superior court. March 22, 1926.

In addition to those appearing in the opinion, the following facts are necessary to an understanding of the question dealt with by the court. The plaintiff wrote her sister this letter:

"793 Piedmont Avenue, Atlanta, Georgia. May 24th, 1918.

"Dearest Mary, Will you kindly form a Trust Fund out of the proceeds of the sale of the Port Chester property, after paying all my outstanding indebtedness as described in document signed, witnessed, and forwarded to you this day.

Affectionately yours, Grace Sanders Macy."

Accompanying this letter was a memorandum which provided: (1) Before the trust should be established, the sister should pay certain claims. (2) After deducting from cash on hand all items covered by paragraph one, invest the balance of the cash in selected securities, except $9,000, which is to be kept in reserve for the purpose of taking up the $1,000 mortgage held by the Wickshire Estate and the $8,000 mortgage held by Mrs. Kemp against the Atlanta property. (3) Form a trust fund composed of $9,000

cash for the purposes indicated in paragraph two, all the securities invested as covered in paragraph two, and any small balance in cash that may be covered on hand, as the investments can not be figured to come out even, the total being the balance of the proceeds of the sale of the Port Chester property after deduction of the items covered in paragraph one. (4) At maturity on November 21, 1918, pay off Mrs. Kemp's mortgage of $8,000, and obtain a similar assignment from her of her mortgage to Mary Sanders Hays, trustee. If Mrs. Kemp refuses to give an assignment and demands payment and satisfaction of the mortgage, it will be necessary to have new papers drawn by Jack and Elinor. In either case the result is the same, except for the revenue and recording taxes. The assigned mortgages or new mortgages can be extended for a long period by Mary Sanders Hays as trustee, at nominal interest, subject to certain conditions as follows: Mortgages to remain undisturbed so long as the property 793 Piedmont Avenue shall be owned by John H. Macy and Elinor Macy Roberts, or either of them, and taxes and assessments be paid with reasonable promptness, and no liens are permitted to accrue on the property ahead of the mortgages. Mortgages to be due and payable upon sale of property, at the option of the trustee, or upon sale of the interest of either Jack or Elinor to a third party, at the option of the trustee, and become immediately interest bearing at legal rate. Grace S. Macy shall have the privilege of occupying one apartment in 793 Piedmont Avenue, free from all rent and expenses during her lifetime; and if she chooses to live elsewhere, the rent that may be received for her apartment shall be paid to her as would be the case in a sublease by her. In this way the money used to take care of these mortgages of $9,000 will remain a part of the trust fund in the form of mortgages on 793 Piedmont Avenue, which will not only protect the principal of the trust fund, but protect the children to the greatest possible degree against remortgaging, mortgaging of the one-half interest of either, or attachment for debt against the interest of either of them. (5) The trust fund is to be established along substantially the following lines: Mary Sanders Hays to execute trust deed covering (a) $9,000 in cash, (b) certain investments, (c) any residue in cash, being items mentioned in paragraph 3, for the purposes enumerated therein. The income from the trust fund to be payable to Grace Sanders Macy during her lifetime.

The substantial parts of the declaration of trust are as follows: I, Mary Sanders Hays, of the Borough of Manhattan, City of New York, do hereby acknowledge and declare that I have created, set aside, and hold in trust for the benefit of Grace Sanders Macy, of Atlanta, State of Georgia, upon the conditions and for the uses and purposes hereinafter set forth, the sum of nine thousand, five hundred and ninety-three 52/100 dollars (9,593.52), and certain securities purchased at the cost of twenty-two thousand, three hundred and eighty-seven 50/100 dollars (22,387.50). To hold the said securities or to sell the same in my discretion, and to invest and reinvest the proceeds thereof and the said cash in such securities, property, and mortgages as in my discretion as such trustee shall be deemed best, and especially to invest part of said cash or proceeds of the sale of securities, as in my discretion, in certain mortgages which are not liens on the real property known as No. 793 Piedmont Avenue in Atlanta in the State of Georgia, by taking assignments of said mortgages or otherwise, and upon such terms and conditions as I may deem proper. And in the investment and reinvestment of the funds of the trust hereby created, I may make any form of investment that I may deem proper and shall not be limited to such investments as may be legal for the investment of trust funds under the laws of the States of Georgia and New York, and I shall not be bound by any other restrictions as to the form of such investments. To receive the income, dividends, and profits of said trust fund and to pay over the net proceeds thereof unto the said Grace Sanders Macy from time to time during the period of her natural life, and upon her death to pay over the principal of the trust fund hereby created to the children of said Grace Sanders Macy; and if either of said children has departed this life, leaving issue, then the portion of said principal fund which said child would have been entitled to under this instrument to be paid over to such issue per stirpes. But in the event that either one of said children should depart this life without issue, prior to the decease of the said Grace Sanders Macy, then that the whole of said principal fund shall be paid over to the other of said children, or the issue of said child, in equal shares. . . The income of the trust fund hereby created is not to be subject to assignment by the party of the first part. . . It is further understood that this instrument

shall be irrevocable. The principal of the fund to be divided among her descendants after her death, per stirpes. In plain English this means that if one of your children should die before you, leaving children, his or her share would be divided between these grandchildren; and if one of your children should die without children, the surviving child should get all. . . The trustee to have sole and absolute control and discretion in making investments for the trust fund, the sale of investments and the reinvestment of the proceeds. This is to permit the trustee to take care of the mortgages on the Atlanta property, as well as to invest on as broad a scale as possible, in order to obtain a better income than could be obtained by investment in securities. . . It must be thoroughly understood, that, once this trust fund is established, it will be absolutely impossible under any imaginable circumstances to touch any part of the principal whatever, no matter how grave the emergency, except for the purposes of the legitimate investment for the benefit of the trust fund itself. The essential reason for establishing this trust fund is to secure for Grace Sanders Macy a regular income for the rest of her life. . .

At the foot of the above declaration, the following appears: "The above is approved by me. Grace Sanders Macy." Her signature was witnessed by three witnesses, one of whom was a notary public. The instrument was likewise signed by Mary Sanders Hays, and her signature was duly acknowledged before a notary public.

*J. K. Jordan,* for plaintiff.

*Dorsey, Shelton & Dorsey* and *Ralph H. Pharr,* for defendant.

HINES, J. Grace S. Macy is the complainant in this case. Her maiden name was Grace Sanders. She married John H. Macy in 1894. There were born of that marriage two children, John H. Macy III, and Elinor Macy. This husband died in 1903. Plaintiff married David H. Keefer in 1907, from whom she was divorced in 1916. Prior to October 31, 1912, plaintiff owned a piece of property in Connecticut, known as the Port Chester Place. On that day she deeded this property to her sister, Mary Sanders Hays, for the consideration of one dollar and other valuable considerations. This conveyance was made to defeat any claim which her then husband might have in this property upon her death. The sister held the title to this property for the plaintiff, and

treated it as her property. In April, 1918, the sister received an offer of $42,500 for the Port Chester Place, and telegraphed the plaintiff to ascertain if she should sell it at that price. Plaintiff accepted this offer and agreed to the sale; whereupon the sister conveyed the property to the purchaser and received the purchase-price. On May 24, 1918, plaintiff wrote to her sister, requesting the latter to hold the money arising from the sale of said property in trust. Accompanying this letter was a memorandum touching the disposition of said fund and the terms of said trust. On June 18, 1919, the sister executed a writing creating said trust, and the same was approved by the plaintiff, in writing · at the end thereof, signed by her and duly attested. The instrument creating the trust was likewise signed by the sister, and the same was duly acknowledged by her. The above letter, the substantial parts of said memorandum and of the instrument creating said trust are set out in the statement preceding this opinion.

Prior to August 31, 1914, plaintiff owned the premises known as 793 Piedmont Avenue, Atlanta, Georgia. She borrowed from Margaret B. Kemp, now Daman, the sum of $8,000, and to secure its payment she executed to the lender a mortgage on said premises. On said date plaintiff conveyed by deed said premises to William H. Hays, as trustee for her children above named, to hold the same until the youngest of them attained the age of 21 years. This conveyance was made "subject to the mortgage heretofore given to Margaret B. Kemp," the mortgage so referred to being the security deed from plaintiff to said lender, sought to be canceled by plaintiff's petition. Her said children became of age prior to October 14, 1918. On said date William H. Hays, as trustee, conveyed said property to said children. This conveyance was made "subject to a mortgage or loan deed of $8,000, given by" the plaintiff "to Mrs. Margaret B. Kemp, November 21, 1913." On August 18, 1922, said children, in consideration of the sum of $20,000, conveyed by warranty deed said property to the plaintiff, subject to said loan of $8,000. In March, 1926, the children, by separate quitclaim deeds, conveyed said property to the plaintiff, "without reservation as to any loan, security deed, or mortgage." On July 10, 1918, Margaret B. Daman sold and assigned to Mary Sanders Hays, trustee under said trust, the note given by plaintiff to her for said loan of $8,000, and by a quitclaim deed transferred to

said trustee all her rights under said security deed. The present suit was brought by the plaintiff against Margaret B. Daman and Mary Sanders Hays, to cancel said security deed made by plaintiff to Margaret B. Daman to secure said loan of $8,000, and said quitclaim deed from the latter to Mary Sanders Hays, trustee. On June 19, 1918, both of the above-named children of plaintiff were married. The daughter, Elinor, had born to her a daughter, but plaintiff's son had no children at that time. The son reached his majority in 1916, and the daughter reached her majority on August 31, 1918. The case came on for trial; and the above facts appearing, the trial judge directed a verdict in favor of the defendants, on which judgment was entered. The plaintiff excepted, and assigned error upon the following grounds: (a) The verdict and judgment are contrary to law. (b) The evidence demanded a finding that plaintiff's money paid the debt secured by the security deed sought to be canceled, and the title residing in Margaret B. Daman by virtue of said security deed passed out of her and to plaintiff upon the payment of said indebtedness with plaintiff's money, and the full right, title, and interest in said security deed was thereby vested in plaintiff. (c) The only purpose of the trust attempted to be created in Mary S. Hays in 1918 was to prevent plaintiff's children from encumbering and wasting said property, which purpose was accomplished when said children afterwards, in 1922, conveyed said premises to plaintiff, whereby the trust as to said security deed became thereupon wholly executed. (d) The sale and conveyance of said premises by plaintiff's children vested in her the full legal and equitable title to said premises, and the title under said security deed merged into the title of plaintiff under said conveyance from her children, and thereby became extinguished.

1. It is insisted by counsel for the plaintiff that the effort to create the trust set up by the defendants was abortive, because the declaration of the trust does not meet the requirements of the statute of frauds, the same not having been signed by the plaintiff; and that in consequence the funds of the plaintiff were not impressed with a trust but remained her individual funds, and when used to pay off the loan due from her to Margaret B. Daman, such payment extinguished the lien of this security deed, and when the same was transferred to Mary S. Hays, trustee, the

latter held the same in trust for the plaintiff. In other words, it is contended that the funds used by Mrs. Hays in purchasing this incumbrance was the individual money of the plaintiff and not trust money, and that in consequence this incumbrance was discharged by the plaintiff and not purchased by Mrs. Hays with funds which she held as trustee. It is true that an express trust can only be created or declared in writing. Civil Code (1910), § 3733; *Smith* v. *Peacock,* 114 *Ga.* 691 (3) (40 S. E. 757, 88 Am. St. R. 53) ; *Jenkins* v. *Lane,* 154 *Ga.* 454, 476 (115 S. E. 126). But no formal words are necessary to create an express trust. Whenever a manifest intention appears that another person shall have the benefit of the property, the grantee shall be declared a trustee, and a trust is created. Civil Code (1910), § 3728; *Peavy* v. *Dure,* 131 *Ga.* 104, 109 (62 S. E. 47). Applying the above principle, the declaration was sufficient to create a trust for the purposes therein declared; and the instrument being signed both by the plaintiff, who was owner of the funds which were to constitute the subject-matter of the trust, and by her sister, who was to hold them in trust, the requirements of the statute of frauds were met. The trust was thus created or declared in writing. So we are of the opinion that the contention that the trust was void for lack of compliance with the requirements of the statute of frauds is not well taken.

2. It is next urged by counsel for the plaintiff that the evidence demanded a finding that her money paid the debt secured by the deed which she seeks in this proceeding to have canceled, and that the title of the grantee in this security deed passed out of her and into the plaintiff upon the payment of the debt thereby secured with the plaintiff's money. We do not think that this position is well taken. It is true that the fund used by the trustee in purchasing the note of the plaintiff secured by this deed, and in acquiring the title thereby conveyed, was formerly the money of plaintiff. But before this was done these funds had become impressed with a trust. This was no longer the individual money of the plaintiff. By the declaration of trust, title to these funds had passed from the plaintiff into her sister, to be held for the purposes of the trust created by the instrument hereinbefore dealt with. In fact this debt was not paid. The transaction was a purchase of the note representing this debt, and the acquisition of

the title of the grantee in the security deed. We concede, although the transaction did not purport to be a payment of this debt, but the purchase of the note given therefor by the plaintiff, that if the money of the plaintiff had been used the transaction would in effect have amounted to the payment of the debt and the extinguishment of the title of the holder of this deed. If the money of the plaintiff was used to pay this debt, the title of the property which she had conveyed to the lender to secure its payment became revested in her. Title remained in the vendee in the security deed only until the debt thereby secured was paid in full. Civil Code (1910), § 3306. If such debt had been paid in full by the debtor out of her own funds, and the title taken in the name of her sister as trustee, the latter would have held the title for the benefit of the plaintiff, upon the principle that when the legal title is in one person but the beneficial interest from the payment of the purchase-money is in another, a trust is implied in favor of the person whose money is used in acquiring the title. Civil Code (1910), § 3739; *Scott* v. *Taylor,* 64 *Ga.* 506; *Swift* v. *Nevius,* 138 *Ga.* 229 (75 S. E. 8). But, as we have seen, the fund used by the trustee in purchasing the note of the plaintiff secured by this deed was not the money of the plaintiff, but it had been impressed with a trust under the instrument to which we have referred. The transaction was an investment by the trustee in the note of the plaintiff, secured by her deed to Mrs. Kemp, and transferred by the latter to the trustee.

3. It is next insisted by the plaintiff that the only purpose of the trust attempted to be created by Mary S. Hays in 1918 was to prevent plaintiff's children from incumbering and wasting the Atlanta property which the mother had conveyed to William H. Hays in trust for them, and that this purpose was fully accomplished when the children afterwards, in 1922, conveyed said property to their mother, whereby the trust, as she contends, became thereupon wholly executed. The motive which prompts one to create a trust, and the purposes for which the trust is created, are entirely different. Conceding that the motive which prompted the plaintiff in creating this trust, and in authorizing the trustee to invest a portion of the trust funds in the incumbrance upon the Atlanta property, was to prevent the children from wasting and squandering this property, the purposes of the trust must be

ascertained from the declaration or instrument creating it. The purposes of the trust were twofold. First, the income therefrom was to be paid to plaintiff during her lifetime. Second, upon her death the principal of the trust fund was to be paid to the children of the plaintiff; and in the event that either of her said children had died leaving issue, then the portion of said principal fund which said child would have been entitled to under the trust was to be paid over to such issue, per stirpes. The instrument creating the trust further declares that in the event either of the children should depart this life without issue, prior to the death of the plaintiff, then the whole of said principal fund shall be paid over to the other of said children, or to the issue of said child in equal shares. Under these provisions of the instrument creating this trust, we do not think that the trust became executed upon the arrival at age of the children of the plaintiff who were in life at the time the trust was created. A trust is executory as long as something remains to be done by the trustee, either to secure the property, to ascertain the object of the trust, or to distribute according to a specified mode, or the trustee is to do some other act which requires him to retain the legal estate. Civil Code (1910), § 3736. We think the proper construction of the instrument creating this trust requires us to hold that it clothed the trustee with full title to this trust fund, and that, as to the children of the plaintiff, it should be considered as abiding in him until, upon the death of their mother, the identical persons who were to take and enjoy the remainder could be definitely ascertained. Up to that time the trust is executory, and the remainder is an equitable and not a legal estate. *Watts* v. *Boothe,* 148 *Ga.* 376 (96 S. E. 863) ; *Woodbery* v. *Atlas Realty Co.,* 148 *Ga.* 712 (98 S. E. 472) ; *Sparks* v. *Anderson,* 150 *Ga.* 58 (102 S. E. 423) ; *Sparks* v. *Ridley,* 150 *Ga.* 210 (103 S. E. 425).

Under the instrument creating this trust the income from the trust fund is to be paid to the plaintiff for life. Upon the death of the plaintiff the principal of the trust fund is to be paid to her children; and if either of her children should die before the death of the plaintiff, leaving issue, then the portion of said principal fund which said child would have been entitled to is to be paid over to such issue, per stirpes. In the event that either one of the children should depart this life without issue, prior to the

death of the plaintiff, then the whole of said principal fund shall be paid to the other of said children, or to the issue of said child in equal shares. The persons who are to take the principal of this fund in remainder can not be ascertained until the death of the plaintiff. This being so, the trust did not become executed upon the arrival of the plaintiff's two children at their majority, and by their conveyance to their mother of the Atlanta property in 1918.

But the proper decision of this case does not depend upon the question whether or not this instrument created an executory trust. Granting that it was an executed trust, the plaintiff does not make a case for cancellation. The conveyance of this property from the children to the mother, made in 1918, was expressly made subject to the mortgage or loan deed held by Mrs. Kemp. So clearly under this conveyance the plaintiff acquired no title to the interest or estate held by Mrs. Kemp under her deed to the Atlanta property. But it may be said that the children, in March, 1926, by quit-claim deeds, conveyed this property to the plaintiff, "without reservation as to any loan, security deed, or mortgage;" and that the effect of this conveyance was to put the title to the Atlanta property in the plaintiff, free from the security deed to Mrs. Kemp, which she seeks to have canceled in this proceeding. These conveyances did not avail the plaintiff and entitle her to cancellation of this security deed, for two reasons. One is, that, if the execution of these quitclaim deeds was necessary to give her a cause of action for the cancellation of this security deed, they were made pendente lite, and for this reason her cause of action had not accrued and become complete at the time she instituted this suit. It is a well-established rule that a plaintiff must recover upon facts as they existed at the time of the commencement of the action. *Wadley* v. *Jones,* 55 *Ga.* 329; *Baker* v. *Tillman,* 84 *Ga.* 401 (11 S. E. 355); *Graham* v. *Williams,* 114 *Ga.* 716, 718 (40 S. E. 790). The second reason is, that, granting that the effect of these quitclaim deeds was to vest in the plaintiff the interest of the children in the incumbrance upon the Atlanta property, they certainly could not convey to her the interest of others who were interested as beneficiaries under this trust, in the purchase of this incumbrance. We have seen that it is possible that neither of these children may have any interest in the principal of this trust fund

at the death of their mother. If either should die before their mother dies, such deceased child would take no interest in the trust estate. If the deceased child left children, they would take the share in the trust fund which would go to such child if living. So the effect of these quitclaim deeds was not to convey to the plaintiff all the right, title, and interest of all parties who may take under the trust instrument. They certainly did not convey the contingent interest which the descendants of these children may have in this trust fund. As the cancellation of this security deed would defeat the interest of these contingent remaindermen therein, its cancellation will be denied. *Latham* v. *Inman*, 88 *Ga.* 505 (2) (15 S. E. 8).

4. Plaintiff next insists that the sale and conveyance of the Atlanta property by her children vested in her the full legal and equitable title to said property, because the title under the security deed merged in the title of plaintiff under said conveyance from the children, the security deed thereby becoming extinguished. From what has been said, this contention is not well taken. The estate created by the security deed never vested in toto in the plaintiff. If the plaintiff had acquired the entire estate created by the security deed, and the title to the property subject to said security deed, the former estate would have been merged into the greater estate. This was not the case, and no merger of the two estates took place.

5. In view of the rulings above, the court properly directed a verdict for the defendants.

*Judgment affirmed. All the Justices concur.*