### 8419. GUNTER v. THE STATE.

1. Section 513 of the Penal Code of 1910 may be violated by wrecking or attempting to wreck a street-car or coach when used for the purpose of travel or transportation on any railroad-track, where the motive power is supplied by electricity.

2. Where, without objection on the part of the defendant, the trial judge sets aside a juror because of facts elicited by questions propounded by the court, the defendant is estopped from complaining of the verdict on the ground that the court erred in setting aside the juror.

3. On the trial of one indicted under section 513 of the Penal Code, testimony of passengers on the car alleged to have been wrecked by the use of dynamite, as to injuries resulting to them from an explosion which affected the car, was admissible to aid in determining whether the purpose of the defendant was to wreck the car, or only to obstruct or injure the track, and also to throw light upon the issue whether the car was wrecked by the use of dynamite or otherwise.

4. There was no error in admitting testimony that on the night of the alleged wrecking of the street-car, three sticks of dynamite were found at another point on the track of the same railroad company, the defendant having admitted that he placed it at that point, and it being clearly inferable from the evidence that it was placed there in pursuance of a general scheme or plan by the defendant to wreck the cars of the street-railroad company.

5. Evidence as to admissions of guilt involving the defendant, made by a coconspirator after the termination of the conspiracy, was admissible, where it appeared that they were made in the presence of the defendant himself and were then freely and voluntarily declared by the defendant to be true.

6. When considered in the light of the entire charge of the court, there was no error in the charge relative to confessions; and the instruction that the jury must look to the "evidence," to ascertain if the confession was freely and voluntarily made, did not prevent consideration of the defendant's statement to the jury to the contrary, where the court fully and properly instructed the jury as to the weight and value they might accord to the defendant's statement.

7. The evidence amply authorized the verdict, and the trial judge did not err in overruling the motion for a new trial.

DECIDED APRIL 24, 1917.

Indictment for wrecking car; from Fulton superior court—Judge Hill. December 23, 1916.

C. P. & Ernest G. Bentley, F. A. Hooper, for plaintiff in error.
John A. Boykin, solicitor-general, E. A. Stephens, contra.

WADE, C. J. 1. The accused was tried under an indictment drawn under section 513 of the Penal Code, which provides that "Any person who shall, by any device whatever, wreck, or attempt to wreck, a railroad train, locomotive, car, coach, or vehicle of

any kind, when used or run on any railroad-track for the purpose of travel or transportation, or assist or advise it to be done, shall be punished with confinement in the penitentiary for life," etc. Though electric-cars may not have been in operation in this State at the time of the passage of the act from which this section of the code was taken, it is nevertheless broad enough to include by its terms any cars, coaches, or vehicles "when used or run on any railroad-track for the purpose of travel or transportation," regardless of the motive power employed to impel them along such track. As was said in *Savannah &c. Railway* v. *Williams,* 117 *Ga.* 414, 419 (43 S. E. 751, 61 L. R. A. 249): "The constitution, statutes, and decisions of this State recognize that the word 'railroad' is generic, and includes street-railroads, narrow-gauge roads, horse-power companies, dummy-lines, and street-railroads operated by electricity." See also *Georgia Railway & El. Co.* v. *Joiner,* 120 *Ga.* 905, 907 (48 S. E. 336). The rational rule to be observed in considering this statute is that suggested by the holding in *Barker* v. *State,* 118 *Ga.* 35, 40 (44 S. E. 874), that "Laws broad enough in their terms may embrace instrumentalities and methods afterwards coming into existence, although unknown at the time the laws were enacted." Measured by this rule, it is clearly apparent that the statute in question is broad enough to embrace wrecking or attempting to wreck a street-car or coach, when used or run for the purpose of travel or transportation on any railroad-track, where the motive power is supplied by electricity, notwithstanding electric-cars may not have been in operation in the State at the time this law was enacted. For a fuller discussion of the question involved, see *Wilson* v. *State,* ante, 759.

2. No objection being urged by the defendant at the time, there is no merit in the ground of his motion for a new trial complaining that the court erred in setting aside, of its own accord, one of the venire men as disqualified to sit as a juror, because of the fact, elicited by a question propounded by the court, that he was a member of a labor union, which was then on a strike and of which the defendant was a member, and did not propound to the juror the statutory questions on the voir dire to test his qualifications under the laws as an impartial juror. The defendant, by failing to make timely objection, and by thus agreeing in effect to take his chances of acquittal with this juror stricken from the panel put

upon him, waived his right to complain thereafter on this ground.

3.    The 6th and 7th grounds of the amendment to the motion for a new trial, which complain of the admission by the court, over objection by the defendant's counsel, of testimony from persons on the car at the time it was wrecked, that they had been injured by the alleged explosion, and as to the nature and extent of such injuries, upon the ground that this evidence was "irrelevant and illegal" and tended strongly to arouse the indignation of the jury against the defendant and prejudice his cause before them, are without any substantial merit.    The defendant was charged with wrecking and attempting to wreck, "by the device, use, and employment of dynamite," a street-car and coach then being used and run upon the railroad-tracks of a certain corporation in Fulton county, Georgia, for the purpose of travel and transportation.    An inspection of the record shows that the defendant, by questions propounded by his counsel to the State's witnesses, on cross-examination, attempted to raise the issue, or to suggest a doubt, as to whether the car had been wrecked by the use of dynamite, as alleged in the indictment, or simply by the breaking of a rail from other causes.    A confession by the defendant that he had used dynamite in wrecking and attempting to wreck this car was in evidence, and testimony as to the nature and character of the injuries to the car itself and to the passengers therein was relevant not only as a part of the res gestæ, but also as tending to establish that the purpose of the defendant was to wreck the coach or car (in violation of section 513 of the Penal Code), rather than to destroy, injure, or obstruct the railroad-track (punishable under section 522 of the Penal Code).    This question whether the defendant intended to wreck the car, or only to obstruct or injure the railroad-track, was for the jury, and therefore testimony tending to elucidate his intention was proper.    So, also, the testimony as to the grave character of the injuries inflicted upon the passengers in the car at the time of the explosion was relevant, because it tended to show the nature and power of the explosive employed and to corroborate the statement in the confession of the defendant that dynamite was in fact the explosive used, as alleged in the indictment.    In the opinion of the writer, even the length of time the injury resulting to one passenger persisted in its effects might tend in some slight degree to illustrate the force and power of the

explosion which produced it, and therefore the character of the explosive used and the intent and purpose of the defendant to wreck the car by its use. At any rate, it can not be said that the evidence objected to was inadmissible because wholly "irrelevant and illegal."

4. The 8th ground of the amendment to the motion for a new trial alleges error in the admission of testimony, over the objection that it was irrelevant and illegal, that on the night of the alleged wrecking of the street-car, three sticks of dynamite were found at another point on a track of the same street-railroad company. It appears, by a note of the presiding judge, that the "defendant admitted this act;" and in a written confession of the defendant, which was in evidence, he admitted that he placed the dynamite on the track at the place referred to in this testimony. The evidence was clearly relevant and admissible to corroborate the confession of the accused, and also because it tended to show one systematic plan or scheme on the part of the defendant to wreck the cars of the street-railroad company, consummated by the wrecking of one car, and his intention to wreck such cars rather than to obstruct or injure the tracks by placing dynamite at the point where a car was in fact wrecked.

5. There was no error in admitting testimony that one Wilson, who was indicted jointly with the defendant Gunter, made certain statements to the witness as to the presence of Gunter with Wilson in an automobile discovered by the witness soon after the commission of the alleged crime, which statements tended to connect Gunter therewith. The witness testified that Wilson made this statement to him in the presence of Gunter, and not only does it appear from the note of the trial judge to this ground of the motion that "Gunter was present and also admitted the same fact," but an inspection of the record discloses that Gunter agreed at the time to the statement made by Wilson, and also himself then precisely admitted the same facts.

6. The last ground of the amendment to the motion for a new trial complains that the court erred in charging the jury as follows: "A confession induced by the slightest hope of benefit or the remotest fear of injury is not evidence at all, and if the evidence should show that it was so induced, and if there is any evidence in this case that this confession, introduced by the State,

was induced to be made by this man now on trial, by the slightest hope of benefit accruing to him, made by any one having authority to make it, or the remotest fear of injury to him, the hope of benefit or fear of injury induced it, the jury would not be authorized to consider it at all. But if the evidence discloses it was freely and voluntarily made, and was not induced by the slightest hope of benefit or the remotest fear of injury," etc.

It is objected that this charge was error because it instructed the jury that they must look to the "evidence" to ascertain if the confession was freely and voluntarily made, whereas the defense relied entirely upon the statement of the defendant to show that it was not in fact freely and voluntarily made. It is further insisted that the harmful effect of this charge was augmented by the further instruction: "You have heard the statement of the defendant; it is not evidence strictly speaking, but the jury have the right," etc. It is insisted that the effect of this language was to "make the jury unable to disregard the confession." The court fully charged the jury in this immediate connection that they had the right to believe the statement of the defendant in preference to the sworn evidence, if they saw proper to do so, and they were clearly authorized by the charge as a whole to accept, as against all the sworn evidence to the contrary, the statement of the defendant, which was unsupported by any testimony whatever, to the effect that his confession was induced by promises of immunity from punishment. The omission to include in the excerpt complained of a reference to the statement of the defendant, as well as to the evidence, constitutes no reversible error. In principle this question is controlled by the ruling in *Early* v. *State,* 14 *Ga. App.* 467 (2) (81 S. E. 385), and cases therein cited (p. 470).

The remaining objection to this excerpt from the charge, that the court erred by limiting the jury to the consideration of only that hope of benefit which might have been excited or created by "any one having authority" to make promises of immunity, is without merit. All the witnesses who testified in the case deny absolutely that any promise or threat had been made to the defendant, and his entire statement to the jury was as follows: "Well, the way that came about, they got us up there and I was scared, and was scared; we didn't know what we were doing; I don't. I don't know about the others. And they just told us that they was

going to prove a whole lot of this on us. They just said they were going to send us up for 20 years or lifetime if we didn't go on and sign these papers, and of course I didn't know what to do. I didn't know what to do only just go ahead and sign them, all I knowed to do. They were going to turn us loose and let us go right on off just as soon as we signed these papers. That is all they wanted, get some man higher up; Pollard and Teat were the men they were after; and they told us just to sign these papers, they would turn us loose and let us go. I think that is all." In this statement it is nowhere suggested that the slightest hope of benefit or remotest fear of injury to the defendant was held out or aroused by any person not "having authority," and therefore it is enough to say that no possible harm appears to have resulted to the defendant by the qualification in the charge of the court which is complained of. We need not consider whether this limitation would be in some other case improper or even inapt, though it is self-evident that proof of a promise or threat, made by some person utterly without any power or authority, actual or apparent, to confer a benefit or inflict punishment upon one accused of crime, could have but little weight in destroying the effect upon a jury of a plenary confession, supported by clear and positive evidence that it was freely and voluntarily made. It is sufficient to say that it nowhere appears that "they," referred to in the statement of the defendant as making promises and threats, were lacking in power or authority to hold out some hope of reward to the accused, and therefore it does not appear that any harm resulted to the defendant from this instruction.

Furthermore, the court elsewhere and in this connection fully instructed the jury that confessions are not favored in law, and must be received with great caution and scanned with great care, and that a confession can only be considered "if the evidence discloses that it was freely and voluntarily made and was not induced by the slightest hope of benefit or the remotest fear of injury," and instructed the jury that they might accept the statement of the defendant in preference to the sworn testimony in the case, without in any way limiting the source of the hope of benefit or fear of injury therein referred to. It may be said, in passing, that not only did the defendant in his statement to the jury fail to deny his guilt of the serious charge against him, or dispute the correct-

ness of any single detail set forth in his alleged confession, but he contented himself with simply asserting that he was "scared," and therefore made the confession of guilt, induced by the hope of benefit to him and fear of injury, excited by the promises and threats of persons not named.

7. No recital of the evidence adduced at this trial is necessary. It is sufficient to say that the plenary confession of the accused was corroborated not only by proof of the corpus delicti, which therefore authorized his conviction, but before making his full confession he ratified the assertion, made by another, that he was present near the scene of the crime at the time of its commission, and himself asserted this fact, and also the further fact that a search of the vehicle in which the defendant then was would have revealed the presence of dynamite and explosive caps—the latter in the pocket of the defendant himself. No comment on the enormity of the crime, when measured by the possible results to innocent passengers on the car of the street-railroad company, who were in no sense connected with or involved in the controversy between the railroad corporation and the defendant and other former employees of the corporation, is requisite, since this court is concerned only with the question whether the defendant had a fair trial, free from harmful errors; and nothing in the record presented to us suggests anything to the contrary.

*Judgment affirmed. George and Luke, JJ., concur.*