S96A0569, S96A0571. ANDREWS v. RENTZ (two cases).
(470 SE2d 669)

BENHAM, Chief Justice.

This direct appeal involves a will contest. William J. Bignon, Jr. died testate in 1993 at the age of 83. His estate consisted of approximately $150,000 on deposit and two residences valued in excess of $100,000. His first will, executed in 1988, apparently left the bulk of his estate to his granddaughter and $200 to his daughter, Patricia Ann Bignon Andrews. His latter will, executed in 1991, left his granddaughter nothing, left Andrews with $200, and left Mary W. Rentz, a friend of Bignon who had taken care of him since his wife died, with the bulk of his estate in addition to appointing her as executrix. Rentz filed the will for probate, and Andrews filed a caveat on grounds of undue influence and lack of testamentary capacity.[1] The probate court ruled in favor of probate, and Andrews appealed to the superior court.

Through the testimony of several witnesses, the evidence presented to the superior court indicated that Rentz was a close personal friend of Bignon's, was paid $500 per month to help him, and did help him with his financial affairs and personal needs. Rentz ad-

---

[1] Initially, Andrews had also contested the will on the ground of monomania. At trial, Andrews withdrew this claim.

mitted that she had a confidential relationship with Bignon, but did not discuss the disposition of his estate with him. There was evidence presented regarding Bignon's mental state during the years preceding and following the execution of the 1991 will which indicated that although he was depressed about his wife's recent death, his faculties were normal and he was not disoriented. The trial court directed a verdict in favor of Rentz and subsequently denied Andrews's motion for new trial.

1. We must first address the issue of jurisdiction. Andrews filed a notice of appeal on June 2, 1995, from the judgment directing a verdict in favor of Rentz which was entered on May 26, 1995. That appeal was docketed in this Court as Case No. S96A0569. On August 23, 1995, Andrews filed a motion for new trial in the trial court which was denied on August 26, 1995. She appealed the court's denial of her motion on August 31, 1995, which was docketed in this Court as Case No. S96A0571. Because Andrews did not file a timely motion for new trial under OCGA § 5-5-40, and her notice of appeal from the judgment had divested the trial court of jurisdiction, Andrews's appeal from the trial court's denial of the motion for new trial must be dismissed. See *Housing Auth. of City of Atlanta v. Geter*, 252 Ga. 196, 197 (312 SE2d 309) (1984).

2. Andrews contends that the trial court erred in granting Rentz's motion for directed verdict because sufficient circumstantial evidence regarding lack of testamentary capacity and undue influence was presented to go to the jury. We disagree. A directed verdict is authorized when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." *Scoggins v. Strickland*, 265 Ga. 417 (2) (456 SE2d 208) (1995). To support her claim of lack of testamentary capacity, Andrews presented, inter alia, a physician's testimony that Bignon had a moderate degree of brain atrophy in 1979 which caused forgetfulness, but the physician further testified that such atrophy was not unusual in a person of Bignon's age, and that Bignon was otherwise oriented and able to comprehend and understand. This evidence falls short of showing a lack of testamentary capacity, and certainly fails to show such at the time that Bignon executed the will in 1991. See *Browning v. Holbrook*, 247 Ga. 525 (276 SE2d 635) (1981) (testamentary capacity is determined by the condition of the mind at the time of execution of the will). Therefore, the trial court correctly granted a directed verdict on this issue.

3. " 'Undue influence which operates to invalidate a will is such influence as amounts either to deception or to force and coercion, destroying free agency.' [Cit.]" *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995). A presumption of undue influence arises when it is shown that the will was made at the request of a person who receives a substan-

tial benefit, who is not a natural object of the maker's estate, and who held a confidential relationship with the testator. *Bryan v. Norton*, 245 Ga. 347, 348 (265 SE2d 282) (1980). However,

> "[a] person standing in confidential relation to another is not prohibited from exercising any influence whatever to obtain a benefit to himself. The influence must be what the law regards as undue influence. Such influence that . . . would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse."

*Ehlers v. Rheinberger*, 204 Ga. 226, 230-231 (49 SE2d 535) (1948). The evidence presented at trial indicated that Rentz had a confidential relationship with Bignon and was present during the execution of the 1991 will. However, no evidence indicated that Rentz had any discussions with Bignon regarding the disposition of his estate, participated in the testamentary planning, or requested or coerced Bignon to make such disposition, or that Bignon felt coerced to make the disposition that he did. Further, no evidence was presented to indicate that Bignon did not make the disposition freely and voluntarily or that his free agency to dispose of his estate as he wished was destroyed. In fact, Bignon, in his contested 1991 will, left Andrews the same amount that he did in his 1988 will — $200. This consistency and the lack of any evidence indicating that Rentz unduly influenced Bignon to change his will supports the trial court's granting of a directed verdict on this issue.

4. Because we concluded that the trial court correctly directed a verdict in favor of Rentz, it is unnecessary to consider Andrews's remaining claim that the trial court erred in expressing its opinion to the jury regarding matters of fact.

*Judgment affirmed in Case No. S96A0569; appeal dismissed in Case No. S96A0571. All the Justices concur, except Sears and Carley, JJ., who dissent; Hines, J., not participating.*

CARLEY, Justice, concurring in part and dissenting in part.

This is a will contest between Patricia Ann Bignon Andrews, who is the testator's daughter, and Mary W. Rentz, who is the testator's primary beneficiary and his executrix, but who is unrelated to him by blood or marriage. After the will was offered for probate, Ms. Andrews filed a caveat on the grounds of the testator's lack of testamentary capacity and of Ms. Rentz's exercise of undue influence over him. When the will was admitted to probate, Ms. Andrews appealed to the superior court. The case was tried before a jury and, at the close of Ms. Andrews' evidence, the superior court granted Ms. Rentz's mo-

tion for a directed verdict. Ms. Andrews subsequently filed two appeals to this court. I concur in the dismissal of Case No. S96A0571, for the reasons given in Division 1 of the majority opinion. The majority addresses Case No. S96A0569 on the merits and I concur in Division 2, wherein the grant of a directed verdict on the ground of the testator's lack of testamentary capacity is affirmed. To establish a lack of testamentary capacity in Georgia, there must be a showing of "a total absence of mind" at the time of the execution of the will and Ms. Andrews' evidence was not sufficient to make such a showing. *Anderson v. Anderson*, 210 Ga. 464, 472 (80 SE2d 807) (1954). However, in my opinion, there was sufficient evidence from which a jury could find that Ms. Rentz exercised such undue influence over the testator as would invalidate his will. Accordingly, I believe that the trial court erred in directing a verdict as to that ground of the caveat and must, therefore, respectfully dissent to Division 3 of the majority opinion and to the judgment.

As the majority recognizes, the grant of a directed verdict is authorized only when the evidence as to a material issue is without conflict and the reasonable deductions therefrom would demand that verdict. *Scoggins v. Strickland*, 265 Ga. 417, 418 (2) (456 SE2d 208) (1995). It is also important to recognize, however, that, in making that determination in this case, the evidence must be construed most favorably for Ms. Andrews as the non-moving party. *Francis v. Cook*, 248 Ga. 225 (1) (281 SE2d 548) (1981). The grant of the directed verdict cannot be affirmed if there was "any evidence" which would authorize a jury to return a verdict in favor of Ms. Andrews on the issue of Ms. Rentz's exercise of undue influence. *Southern R. Co. v. Lawson*, 256 Ga. 798, 799 (1) (a) (353 SE2d 491) (1987).

A caveat based upon the ground of undue influence " 'may be supported by a wide range of testimony, since such influence can seldom be shown except by circumstantial evidence.' " *Skelton v. Skelton*, 251 Ga. 631, 634 (5) (308 SE2d 838) (1983). Although the testator had sufficient mental capacity to execute a will, a mere diminution in, rather than a total absence of, his mental capacity is nevertheless relevant when considering the sufficiency of the circumstantial evidence of Ms. Rentz's exercise of undue influence over him. This is true because " 'the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. (Cits.)' [Cits.]" *Skelton v. Skelton*, supra at 634 (5). Here, there was evidence that the elderly testator suffered from moderate brain atrophy, and that he also was highly susceptible to the influence of others. His wife made all of his decisions for him and he was unable to write a check. During his wife's last illness, Ms. Rentz began helping with meals and other household duties. When the testator's wife died in March 1988, Ms. Rentz continued to call on

him, occasionally as often as three times a day. The testator not only came to rely upon Ms. Rentz to help him make his decisions, she began to write his checks and eventually her name was placed on his savings and checking accounts. Thus, a confidential relationship developed and the testator insisted that Ms. Rentz be present when family members visited. Approximately a month after the death of the testator's wife in 1988, Ms. Rentz became actively involved in the plans for the preparation of the will which was executed that year. She made the appointment with the drafting attorney and took the testator to that appointment. She sat in during and participated in the substantive discussions regarding the testamentary disposition of the testator's estate. In those discussions, Ms. Rentz often purported to act more as the testator's independent surrogate than as a mere conduit for the expression of the testator's own testamentary intent. Although the testator subsequently executed the 1991 will that is here at issue, the evidence of Ms. Rentz's participation in the execution of the 1988 will is relevant evidence that, at least since that time, the testator was highly susceptible to her influence over the testamentary disposition of his estate. To ascertain whether undue influence was operative at the time a will was executed, " 'the state of things both before and after may be regarded.' [Cits.]" *Ehlers v. Rheinberger*, 204 Ga. 226, 231 (2) (49 SE2d 535) (1948). Undue influence exercised prior to the execution of a will may continue to operate on the mind of the testator at the time of its execution. *Adler v. Adler*, 207 Ga. 394, 406 (7) (61 SE2d 824) (1950). Evidence of undue influence at other times may be offered to illustrate conditions existing when the will was executed. *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995). See also *Trust Co. v. Ivey*, 178 Ga. 629, 641 (3) (173 SE 648) (1934). The evidence may not have demanded a finding that Ms. Rentz's continuing influence over the elderly and dependent testator was "undue," but it would, in my opinion, authorize such a finding and preclude the grant of a directed verdict in Ms. Rentz's favor. Influence is "undue" if it was obtained by " 'superiority of will, mind, or character, which would give dominion over the will to such an extent as to destroy free agency. . . .' " *DeNieff v. Howell*, 138 Ga. 248, 249 (6) (75 SE 202) (1912). Accordingly, unlike the majority, I do not find it material that the testator likewise bequeathed Ms. Andrews only $200 in the 1988 will, since that will is no less susceptible to a caveat based upon Ms. Rentz's alleged undue influence than is the 1991 will that is here at issue.

On the grounds of public policy, Georgia recognizes the rule that certain transactions are presumed to be the result of undue influence if there is a confidential relationship between the parties "and there exists great mental disparity with the one having the greater mentality reaping the benefit of the transaction ([cits.]). . . ." *Weddle v.*

*Webb*, 224 Ga. 674 (164 SE2d 129) (1968). Here, there was a confidential relationship and, considering the evidence as to the age and mental condition of the testator and the control and domination of the testator by Ms. Rentz over a long period of time, a verdict in favor of Ms. Andrews was, in my opinion, authorized and a verdict in favor of Ms. Rentz was not demanded. *Adler v. Adler*, supra at 406 (7). As in *Skelton v. Skelton*, supra at 634 (5), there was circumstantial evidence tending to show more than a mere opportunity for Ms. Rentz to exert her influence over the testator and the issue of her exercise of undue influence over him in the execution of his will was a question of fact for the jury. Accordingly, I respectfully dissent to the affirmance of the grant of Ms. Rentz's motion for a directed verdict as to that ground of Ms. Andrews' caveat.

I am authorized to state that Justice Sears joins in this opinion.

DECIDED MAY 28, 1996 —
RECONSIDERATION DENIED JUNE 14, 1996.

*Charles E. LeGette, Jr., Walton Hardin*, for appellant.
*John P. Wills, Ben B. Ross*, for appellee.